UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HI-TECH ELECTRIC, INC. OF                                CIVIL ACTION
DELAWARE

VERSUS                                                    NO. 15-3034

T&B CONSTRUCTION AND                                 SECTION "R" (4)
ELECTRICAL SERVICES, INC.


## ORDER AND REASONS

Before the Court is plaintiff Hi-Tech Electric, Inc. of Delaware's (HTE)

motion to dismiss defendant T&B Construction and Electrical Services, Inc.'s

(T&B) first, fourth, sixth, eighth, and ninth causes of action.[1]   For the

following reasons, the Court GRANTS plaintiff's motion.


## I.   BACKGROUND

HTE is a Delaware corporation based in Houston, Texas,[2] and T&B is

a Louisiana corporation and a certified Service Disabled Veteran Owned

Small Business.[3]   On or around September 30, 2009, Clark/McCarthy

Healthcare Partners JV (CMHP) entered into a contract with the United

---

[1]   R. Doc. 92.
[2]   *Id.* at 1 ¶¶ 1-2.
[3]   R. Doc. 90 at 2 ¶ 3.

States of America, by and through the Department of Veterans Affairs, to perform work for the Southeast Veterans Healthcare System Replacement Hospital in New Orleans (the VA Project).[4]  HTE and T&B both sought to take advantage of programs through the Small Business Administration, and decided to cooperatively perform work for the VA project.[5]  On or about August 24, 2011, HTE and T&B entered into a Teaming Agreement, pursuant to which HTE and T&B agreed to cooperate on proposals for the VA Project.[6] The Teaming Agreement also provided that if T&B were awarded contracts for the VA Project, then T&B and HTE would negotiate in good faith for subcontracts to perform work pursuant to those contracts.[7]

On or about January 18, 2012, CMHP entered into a written subcontract (Pan Am Subcontract) with T&B in which T&B agreed to perform electrical work for the VA project in the Pan Am building in New Orleans (Pan Am Project).[8]  The Pan Am Subcontract included work to be performed by HTE, as set forth in the Teaming Agreement.[9]  T&B was also awarded a contract to build a parking structure for the VA Project.[10]  Both

---

[4]     R. Doc. 1 at 2 ¶ 10.
[5]     *Id.* at 3-4 ¶¶ 12-16.
[6]     R. Doc. 1 at 3 ¶ 11.
[7]     R. Doc. 1-1 at 3 ¶ 6.1
[8]     R. Doc. 1 at 3 ¶ 13.
[9]     *Id.* ¶ 14.
[10]    R. Doc. 90 at 6 ¶ 36.

contracts established that T&B would be the Prime Subcontractor, and that T&B would use HTE as a sub-subcontractor.[11]

On or about May 29, 2013, the parties entered into a Memorandum of Understanding (MOU), which addressed the work to be performed by each party and the manner in which payments would be made for work done on the VA Project.[12]  From this date forward, the facts are disputed.  HTE alleges that it properly and timely performed its work on the Pan Am Project but has not yet been paid.[13]  HTE further alleges that despite the VA's approval of HTE's applications for payment and CMHP's willingness to pay HTE, T&B has demanded that HTE not be paid.[14]  Therefore, HTE alleges that T&B breached both the Teaming Agreement and the MOU.[15]

T&B offers a different picture.  According to T&B, HTE has failed to make good on many of the promises contained in the Teaming Agreement, and these breaches resulted in HTE's default under the Teaming Agreement.[16]  T&B further alleges that the MOU is unenforceable because it is contrary to public policy and illegal.[17]  Additionally, T&B alleges

---

[11]     *Id.* at 6-7 ¶¶ 36, 38.
[12]     R. Doc. 1 at 3 ¶ 15.
[13]     *Id.* at 4 ¶ 16.
[14]     *Id.* ¶ 17.
[15]     *Id.* at 4-8.
[16]     R. Doc. 90 at 17-21.
[17]     *Id.* at 13 ¶ 73.

3

throughout its counterclaim that HTE has violated multiple federal laws and regulations.[18]

On July 29, 2015, HTE filed its complaint against T&B, and brought claims for breach of both the Teaming Agreement and the MOU, as well as for violation of the Louisiana Prompt Payment Statute, La. Stat. Ann. § 9:2784.[19]   On November 1, 2016, T&B filed a counterclaim against HTE, asserting nine causes of action.[20]   Specifically, T&B alleges tortious interference with contract, malicious negligence, breach of fiduciary duty, negligent misrepresentation of material facts, breach of contract through negligent misrepresentation of material facts, breach of contract through intentional interference with contract, breach of contract, unjust enrichment, and conversion.[21]   Both parties seek damages, reasonable attorneys' fees, and costs.[22]

HTE now moves the Court to dismiss five of the nine causes of action in T&B's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). T&B filed a response in opposition,[23] and HTE replied.[24]

---

[18]     *See generally* R. Doc. 90.
[19]     R. Doc. 1 at 4-7.
[20]     R. Doc. 90.
[21]     *Id.* at 27-52.
[22]     R. Doc. 1 at 9; R. Doc. 90 at 53.
[23]     R. Doc. 99.
[24]     R. Doc. 108.

## II.   LEGAL STANDARD

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when a plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiffs.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.*  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence

5

of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

## III.  DISCUSSION

### A.    Cause of Action One—Tortious Interference with Contract

The first cause of action in T&B's counterclaim is for tortious interference with contract. T&B alleges that after it was awarded the Pan Am Project, HTE interfered with this contract by refusing to enter into good faith negotiations with T&B, refusing to provide mentoring to T&B as promised, and refusing to comply with the Project's Small Business Subcontracting Program under federal regulations.[25] In its motion to dismiss, HTE argues that under Louisiana law tortious interference with contract claims cannot be maintained against corporate entity defendants.[26] To resist this conclusion, T&B argues that despite only suing HTE and none of its

---

[25]    R. Doc. 90 at 27 ¶ 159.

[26]    R. Doc. 92-1 at 5.

corporate officers individually, it makes allegations against individual officers of HTE and therefore its tortious interference claim should survive.[27]

Louisiana courts and federal courts applying Louisiana law have made clear that claims for tortious or intentional interference with a contract cannot be maintained against corporate defendants. The Louisiana Supreme Court recognized a narrow cause of action of tortious interference in *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989). *Spurney* recognized that an action for tortious interference with contract could be maintained *against a corporate officer* if a plaintiff had a contract or legally protected interest with the officer's corporation, the officer knew of the contract, and the officer intentionally and without justification caused the corporation to breach the contract and damage the plaintiff. *Id.* at 234. But Louisiana courts have not expanded the limited scope of *Spurney* to other situations, *see Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 395 (5th Cir. 2012) (collecting cases), and have continued to hold that there can be no claim for tortious interference against the corporate entity itself. *See, e.g.*, *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 536 (E.D. La. 2007) (holding that tortious interference with contract "cannot be maintained against a corporate entity defendant") (citing *Tech.*

---

[27] R. Doc. 99 at 3.

*Control Sys., Inc. v. Green*, 809 So. 2d 1204, 1207 (La. App. 3 Cir. 2002); *Boudreaux v. OS Restaurant Services, L.L.C.*, 58 F. Supp. 3d 634, 638-39 (E.D. La. 2014) (dismissing tortious interference with contract claim against corporate defendant).   Therefore, there can be no claim of tortious interference with contract against HTE itself.

It is undisputed that T&B's counterclaim is brought solely against HTE as a corporate entity, and that no individual employee of HTE has been sued. T&B's counterclaim does make allegations against individual employees of HTE, but contains no specific allegations against them related to tortious interference with the Pan Am Subcontract.   In the section of T&B's counterclaim titled "Cause of Action Number One: Hi-Tech's Tortious Interference with T&B's Prime Subcontract," there is no mention whatsoever of any individual officer of HTE, and the section is clearly focused on the actions of HTE as an entity.   Further, T&B's response to this motion does not specifically identify any allegations in its counterclaim tying the actions of an officer of HTE to interference with T&B's contract with CMHP.   Instead, it alleges that its counterclaim uses HTE and its individual employees interchangeably.   That argument is unavailing.   Thus, as T&B's tortious

interference with contract cause of action cannot be maintained against a corporate defendant, it must be dismissed.[28]

### B. Cause of Action Four—Negligent Misrepresentation of Material Facts

T&B's fourth cause of action is for negligent misrepresentation of material facts, and "unauthorized use of T&B's contract authority and its name in commission of a felony."[29]  T&B alleges that HTE submitted false tax information and manipulated cost reports, affidavits, and change orders to defraud the federal government and the Louisiana Department of Revenue.[30]  T&B further alleges that these manipulations and misrepresentations not only violated federal laws and regulations, but also damaged T&B, because T&B will ultimately be responsible for "returning to

---

[28]     Additionally, T&B's claim is defective even if it were filed against an individual officer of HTE.  T&B's counterclaim alleges that HTE interfered with a contract between CMHP and T&B and caused *CMHP* to violate the contract.  R. Doc. 99 at 4. But *Spurney* was limited to actions against a corporate officer for interference with "the contractual relation between *[the defendant officer's] employer* and a third person."   538 So. 2d at 234 (emphasis added); *see also Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 284 (W.D. La 1991) (noting that *Spurney* "recognized only an action wherein a corporate officer causes *his own corporation* to breach a contract between *his own corporation* and the plaintiff) (emphasis in original).  Thus, T&B cannot bring a tortious interference claim against an officer of HTE for tortious interference with a contract between CMHP and T&B that CMHP allegedly breached.

[29]     R. Doc. 90 at 36.

[30]     *Id.* at 36-43.

the government the amounts credited back to HTE in its $90,000 tax credit scheme," and T&B is now at risk of default. [31]

Unlike HTE's other attacks on T&B's counterclaim, HTE's attack on T&B's fourth cause of action is brought on standing grounds. A standing motion challenges the Court's subject matter jurisdiction, and it is governed by Federal Rule of Civil Procedure 12(b)(1). Standing consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is an "actual or imminent" invasion of a legally protected interest that is "concrete and particularized"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Further, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984).

HTE argues that, by T&B's own allegations, T&B has not yet paid the government for tax credits HTE allegedly improperly received, nor does it

---

[31]     *Id.* at 42 ¶¶ 264, 266

10

allege that it is actually in default.[32]  Therefore, T&B has not yet been injured by any of HTE's alleged misrepresentations or manipulations.  In response, T&B argues that "default is a very real possibility."

Even if default is "a very real possibility," this alone, without more, is insufficient to establish standing.  Injuries must be actual or imminent, and not "conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  And while threat of future injuries can be sufficient to confer standing, the threat must not be speculative or based on assumptions, but must be "certainly impending." *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (citation omitted). T&B bears the burden of showing that default is certainly impending, and has not alleged facts indicating that default is certainly impending, or impending at all.  Therefore, the risk of default in the future is insufficient to establish an injury-in-fact.

T&B also argues it has suffered an injury-in-fact because it cannot "transact" (*i.e.*, submit) payment applications because of HTE's actions.  But nowhere in T&B's counterclaim does T&B make any allegations related to its ability to transact payment applications, much less that HTE's negligent misrepresentations affected T&B's ability to transact payment applications. "An opposition to a motion to dismiss is not the place for a party to raise new

---

[32]    R. Doc. 92-1 at 6.

factual allegations." *Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (quoting *Peter-Takang v. Dep't of Children & Family Servs.*, No. 14-1078, 2016 WL 69633, at *4 (E.D. La. Jan. 6, 2016)); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 289 (5th Cir. 2006).  Therefore, the well-pleaded factual allegations in T&B's counterclaim do not establish that HTE's actions have harmed T&B's ability to transact payment applications.

Finally, T&B's opposition discusses the False Claims Act, 31 U.S.C. § 3729, including the definitions of words within the Act and caselaw on legal falsity and factual falsity under the Act.[33]  T&B is apparently arguing that it is obligated to return any money to the government that is tainted by fraud and disclose any knowledge of fraud to the government, or face liability under the False Claims Act.  Like the allegations relating to T&B's ability to transact payments, these allegations on FCA liability are missing from T&B's counterclaim.  Further, to the extent T&B's argument suggests that HTE's actions will result in future False Claims Act liability for T&B, this future injury is too speculative and conjectural to establish an injury-in-fact.

---

[33]   R. Doc. 99 at 5-8.

T&B bears the burden of showing that it has suffered an injury-in-fact, and therefore has standing to bring its negligent misrepresentation claim.  It has failed to do so, and thus T&B's fourth cause of action must be dismissed.

### C. Cause of Action Six—Breach of Contract for Intentionally Interfering with T&B's Contract with CMHP

T&B's sixth cause of action is similar to its first, alleging that HTE interfered with T&B's subcontract with CMHP by fraudulently misrepresenting the status of T&B's and HTE's negotiations and by misleading CMHP into terminating its contract with T&B.[34]  HTE argues that despite the reference to breach of contract in the title, this cause of action is really for tortious interference with contract, and therefore must fail for the same reasons that doom T&B's first cause of action.[35]  In response, T&B contends the cause of action is one for negligent misrepresentation.

A legally sufficient complaint must "give the defendant fair notice of what the claim is."  *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal alterations omitted).  Despite T&B's belated attempt to recast its claim as one for negligent misrepresentation, the title of its sixth cause of action, as well as the allegations contained within it,

---

[34]  R. Doc. 90 at 48-51.
[35]  R. Doc. 92-1 at 7.

13

demonstrate that T&B is either asserting a cause of action for tortious interference with contract, or a cause of action based on HTE's alleged intentional and/or fraudulent actions.   In fact, this section of T&B's counterclaim not only fails to mention negligence at all, but also claims that each of HTE's alleged misrepresentations are either intentional or fraudulent.[36]   Other sections of T&B's counterclaim specifically allege negligent misrepresentation, so the omission of allegations of negligent misrepresentation here seems purposeful.[37]   The allegations in this section do not plausibly allege a claim of negligent misrepresentation. The Court will not allow T&B to rewrite its counterclaims through its response to the motion to dismiss, as doing so would deprive HTE of the fair notice that the Federal Rules and *Twombly* require.   Given that what T&B does allege here is closer to a cause of action for tortious interference with contract, this cause of action fails for the same reason identified above.

Further, to the extent that the allegations contained in this section could be read as asserting a claim for intentional or fraudulent misrepresentation, the claim would be insufficient under Federal Rule of Civil Procedure 9(b).   Rule 9(b) imposes a heightened pleading standard for

---

[36]   R. Doc. 90 at 50-51 ¶¶ 323, 331, 336.
[37]   *See, e.g.*, *id.* at 43 ¶ 271 ("The negligent misrepresentation by Hi-Tech . . .").

fraud claims, including state-law fraud claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert. denied*, 588 U.S. 873 (2009).  In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs. Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).  T&B does not identify the "who, when, and where" of the alleged misrepresentations, and therefore if T&B's sixth cause of action were read to be a claim for fraudulent or intentional misrepresentation, it fails under Rule 9(b).

### D.    Cause of Action Eight—Unjust Enrichment

T&B's eighth cause of action alleges that HTE has been unjustly enriched at T&B's expense.[38]  Under Louisiana law, unjust enrichment is a quasi-contractual remedy, and one cannot assert a claim for unjust enrichment if other remedies are available.  *See* La. Civ. Code art. 2298 (stating that unjust enrichment "shall not be available if the law provides

---

[38]    *Id.* at 52 ¶¶ 341-343.

another remedy"); *United States v. Bollinger Shipyards, Inc.*, No. 12-920, 2013 WL 393037, at *15 (E.D. La. Jan. 30, 2013) ("Under Louisiana law, an unjust enrichment claim cannot survive when . . . there is an express contract between the parties and other remedies at law are available.") (citing *Hamburg Steel Buildings, Inc. v. Lawrence Gen. Corp.*, 817 So. 2d 427, 438 (La. App. 2 Cir. 2002)).

It is undisputed that HTE and T&B entered into two contracts, the Teaming Agreement and the MOU, both of which are attached to HTE's complaint.[39]  Additionally, T&B's counterclaim alleges that HTE is liable for breach of the Teaming Agreement.[40]  Therefore, if either contract is valid and enforceable, the contract would bar T&B's unjust enrichment claim.  That plaintiff may not successfully pursue a remedy under the contracts does not give the plaintiff a claim for unjust enrichment.  *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 241, 242 (La. 2010).

T&B contends that the MOU is unenforceable and invalid, and argues that this factual dispute renders dismissal of the unjust enrichment claim premature.  But the Court need not wait to resolve a factual dispute because even if the MOU is invalid and unenforceable, the Teaming Agreement is

---

[39]    R. Doc. 1-1 (Teaming Agreement); R. Doc. 1-3 (MOU).
[40]    R. Doc. 90 at 51.

valid and bars T&B's unjust enrichment claim.  *See Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004) (citing *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993).  In the same paragraph that T&B argues the MOU is unenforceable and invalid, T&B argues that the MOU terminated the Teaming Agreement.[41]  T&B cannot have its cake and eat it too—either the MOU is invalid and the Teaming Agreement remains, or the MOU terminated the Teaming Agreement, and the MOU provides a remedy barring T&B's unjust enrichment claim.  Either way, T&B's unjust enrichment claim fails.

### E.    Cause of Action Nine—Conversion

Finally, HTE challenges T&B's ninth cause of action, which alleges that HTE converted funds to which T&B is entitled.[42]  That the parties have a contractual relationship does not preclude delictual actions like conversion. *See Carriere v. Jackson Hewitt Tax Service Inc.*, 750 F. Supp. 2d 694, 704 (E.D. La. 2010).  Under Louisiana law, conversion has a one year prescriptive period, and the period begins to run from the date the injury or damage is sustained.  *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (citing La. Civ. Code art. 3492).  When the face of the complaint shows

---

[41]    R. Doc. 99 at 12-13.

[42]    R. Doc. 90 at 52 ¶ 345.

that the action is time-barred, plaintiffs bear the burden of showing that the action is not prescribed. *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

T&B makes two arguments against prescription. First, as a threshold matter, T&B argues that its "conversion" claim is really one for breach of contract and breach of fiduciary duty and therefore is not subject to the one year prescriptive period.[43] But T&B unequivocally asserted a claim for conversion, and is alleging that "Hi-Tech has converted certain funds to which T&B is entitled."[44] Further, "even when a contract exists, unless a *specific* contract provision is breached, Louisiana treats the action as tort." *Richard*, 559 F.3d at 345 (citing *Trinity Universal Ins. Co. v. Horton*, 756 So. 2d 637, 638 (La. App. 2 Cir. 2000)) (emphasis in original). T&B has not alleged what specific contractual provision HTE breached giving rise to alleged conversion. Thus, the Court finds that, based on T&B's allegations, the ninth cause of action is a claim for conversion, and is subject to the one year limitations period. *See Carriere*, 750 F. Supp. 2d at 704 ("The allegations in the petition generally control the true nature of the action and the applicable prescription period.") (citations omitted).

---

[43]   R. Doc. 99 at 14.

[44]   R. Doc. 90 at 52 ¶ 345.

Second, T&B argues that even if the one year period applies, the period runs from the date that T&B became aware of the conversion.[45]  Not only is this clearly incorrect as a matter of Louisiana law, *see* La. Civ. Code art. 3492, but T&B also misquotes a case to support its argument.  In arguing that it is the date of knowledge, not date of injury, that starts the prescriptive period, T&B points to *Colley v. Canal Bank & Trust Co.*, 64 F. Supp. 1016, 1019 (E.D. La. 1946), and quotes "when plaintiffs received knowledge of the damage."[46] The next two sentences, which T&B omits, read "[t]he argument is not persuasive. It finds support neither in reason nor in authority."  *Id.*  Thus, *Colley* unquestionably does not support T&B's argument.  T&B is advised for future reference not to distort cases to support its arguments.

Applying the one year prescriptive period to T&B's allegations, T&B's conversion claim is prescribed.   T&B's counterclaim alleges that the conversion occurred beginning in October 2012, and ran through December 2012.[47]   T&B's response in opposition also admits that the conversion occurred during the period of October to December 2012.[48]  Therefore, even assuming the conversion did not occur until December 2012, the claim

---

[45]  R. Doc. 99 at 14.
[46]  *Id.*  T&B underlines "when plaintiffs received knowledge . . ."
[47]  R. Doc. 90 at 40-42.
[48]  R. Doc. 99 at 15.

prescribed by the end of 2013, and certainly prescribed before November 2016, when T&B filed its counterclaim.  T&B's ninth cause of action is dismissed as prescribed.

## IV.   CONCLUSION

For the foregoing reasons, HTE's motion to dismiss is GRANTED. T&B's first, fourth, sixth, eighth, and ninth causes of action are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this \_\_\_15th\_\_\_ day of February, 2017.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE