UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HI-TECH ELECTRIC, INC. OF
DELAWARE

CIVIL ACTION

VERSUS

NO. 15-3034

T&B CONSTRUCTION AND
ELECTRICAL SERVICES, INC.

SECTION "R" (4)


## ORDER AND REASONS

Before the Court are (1) plaintiff Hi-Tech Electric, Inc. of Delaware (HTE)'s for summary judgment on its breach of contract claim against defendant T&B Construction and Electrical Services, Inc. (T&B);[1] (2) HTE's motion for summary judgment against T&B on T&B's counterclaims;[2] (3) T&B's motion to dismiss HTE's claims;[3] (4) HTE's motion to exclude T&B's experts' testimony;[4] and (5) HTE's motion to amend its complaint.[5] For the following reasons, the Court grants HTE's motions for summary judgment; grants in part and denies in part T&B's motion to dismiss; grants HTE's motion to exclude; and denies HTE's motion to amend.

---

[1]     R. Doc. 129.
[2]     *Id.*
[3]     R. Doc. 132.
[4]     R. Doc. 128.
[5]     R. Doc. 148.

## I.   BACKGROUND

HTE and T&B are contractors that perform electrical services.[6]  T&B is a small business owned by disabled veteran John Gaines.[7]  In 2011, the parties cooperated on a proposal to jointly perform work for a Department of Veterans Affairs (VA) project in New Orleans.  This cooperation was memorialized in two teaming agreements, the first dated July 29, 2011,[8] and the second, superseding, agreement dated August 24, 2011.[9]  Under the terms of the second teaming agreement, T&B would submit the bid to the general contractor, Clark/McCarthy Healthcare Partners (Clark/McCarthy), and if T&B were awarded the contract, the parties would negotiate a subcontract for HTE to perform work on the project.[10]  Clark/McCarthy was not obligated to set aside any subcontracts on the VA project for minority- or veteran-owned businesses, but it did have certain nonbinding participation goals.[11]

On January 18, 2012, Clark/McCarthy entered into a written subcontract with T&B, under which T&B agreed to perform electrical work

---

[6]     R. Doc. 129-2 at 2.
[7]     *Id.* at 3.
[8]     R. Doc. 142-2 at 1.
[9]     R. Doc. 129-9 at 12.
[10]    *Id.* at 12, 14.
[11]    R. Doc. 129-11 at 60.

in the VA's Pan Am Building in New Orleans.[12]  T&B was also awarded a subcontract to build a parking structure for the VA.[13]  T&B did not immediately execute a separate subcontract with HTE.  Nevertheless, the two parties began working together on the Pan Am Building in early 2012.[14]  From the beginning, HTE paid the vast majority of the costs of work performed on the Pan Am Building, including T&B's own labor costs and overhead.[15]  But T&B was the party that requested and received payments from Clark/McCarthy.[16]  As a result, T&B transferred nearly all the amounts it received from Clark/McCarthy to HTE.[17]

On May 29, 2013, T&B and HTE entered into a memorandum of understanding (MOU), which described the parties' relationship and respective duties on the Pan Am Building project.[18]  The MOU terminated all but a few sections of the August 2011 teaming agreement.[19]  Under the MOU, T&B's foreman would report to HTE's foreman, and HTE would have final

---

[12]  R. Doc. 1-2.
[13]  R. Doc. 90 at 6 ¶ 36.
[14]  The first payment application was submitted to Clark/McCarthy in March 2012.  R. Doc. 128-2 at 29.
[15]  *See* R. Doc. 129-10 at 37-38.
[16]  *See* R. Doc. 128-2 at 29, 42-43.
[17]  *Id.*
[18]  R. Doc. 129-9 at 7.
[19]  *Id.* at 11.

authority to resolve disputes in the field.[20]  T&B would provide at least 30% of the labor required to complete the project.[21]  T&B would receive 8% of the total estimated labor costs as compensation for overhead expenses, and HTE would receive 22% of the total estimated labor costs for overhead.[22]  The MOU provided that costs on the project "shall be reimbursed within seven (7) business days following receipt of payments for the [w]ork."[23]  Additionally, the MOU allocated 70% of any profit or loss from the work to HTE, and 30% to T&B.[24]

After the parties signed the MOU, Clark/McCarthy determined that its subcontract with T&B did not qualify as participation by a disabled-veteran-owned small business.[25]  T&B asserts that Clark/McCarthy made this determination based on HTE's degree of control over T&B on the VA project.[26]

The parties' relationship grew acrimonious.  In early 2015, T&B and HTE attempted to negotiate a tiered subcontract agreement to replace the

---

[20]    *Id.* at 8, 10.
[21]    *Id.* at 8.
[22]    *Id.* at 9.
[23]    *Id.* at 10.
[24]    *Id.* at 9.
[25]    *See* R. Doc. 129-11 at 60.
[26]    R. Doc. 142-1 at 16.

MOU on the Pan Am Building project.[27]   After negotiations failed, T&B notified HTE that it considered the MOU invalid and unenforceable.[28] Additionally, Clark/McCarthy found that T&B defaulted on the parking garage project,[29] and HTE became the prime subcontractor on that project.[30]

HTE alleges that T&B has since refused to allow further payments to HTE.[31]   Two payment applications to Clark/McCarthy remain outstanding: Payment Application 28 seeks $268,643 for work performed on the Pan Am Building,[32] and Payment Application 29 seeks $287,427 in retainage.[33]   In January 2015, HTE demanded the proceeds of these payment applications from T&B.[34]   T&B apparently refused.   Soon thereafter, Clark/McCarthy received payment demands from both T&B and HTE.[35]   Clark/McCarthy denied T&B's demand partially because of HTE's "claim for outstanding amounts due."[36]  A letter dated April 17, 2015, indicates that Clark/McCarthy

---

[27]    *See* R. Doc. 132-3 at 164.
[28]    *Id.* at 144, 164.
[29]    R. Doc. 129-11 at 195.
[30]    *See id.* at 199.
[31]    R. Doc. 1 at 4.
[32]    R. Doc. 129-7 at 23.
[33]    *Id.* at 26-27.   During the course of the project, Clark/McCarthy retained an average of 5% of the billings, to be paid at the project's conclusion.  *See* R. Doc. 129-10 at 43.
[34]    R. Doc. 129-11 at 179.
[35]    *Id.* at 196, 201.
[36]    *Id.* at 196.

intended to pay HTE directly,[37] but T&B asserts that Clark/McCarthy decided against doing so because it could not find a contractual vehicle that would permit such direct payment.[38]

On July 29, 2015, HTE filed its complaint against T&B, asserting claims of breach of contract and violation of the Louisiana Prompt Payment Statute, La. R.S. § 9:2784.[39] On November 1, 2016, T&B filed nine counterclaims,[40] five of which the Court has dismissed.[41] HTE now moves for summary judgment on its breach of contract claim, and on the remaining counterclaims.[42] HTE also moves to exclude T&B's experts' testimony,[43] and moves for leave to file an amended complaint.[44] T&B moves to dismiss HTE's claims.[45]

---

[37]    *Id.* at 201.
[38]    R. Doc. 142-1 at 57.
[39]    R. Doc. 1.
[40]    R. Doc. 90 at 27-52.
[41]    R. Doc. 112.
[42]    R. Doc. 129.
[43]    R. Doc. 128.
[44]    R. Doc. 148.
[45]    R. Doc. 132.

## II.   DISCUSSION

### A.   HTE's Breach of Contract Claim

The Court first addresses HTE's breach of contract claim, which is the subject of both HTE's motion for summary judgment and T&B's motion to dismiss.   HTE argues that there is no genuine dispute that T&B owes it damages for breach of the MOU.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.  A dispute about a material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

The Court notes that T&B's response to the motion for summary judgment is woefully deficient. The brief lacks argument, references to evidence in the record, and citations to authority. As the Fifth Circuit has explained, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (internal citation and quotation marks omitted). The Court has nevertheless attempted to identify valid arguments and factual disputes within T&B's submissions.

To prevail on a breach of contract claim under Louisiana law, an obligee must establish that (a) the obligor undertook an obligation to perform, (b) "the obligor failed to perform the obligation," and (c) "the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011). To be valid under Louisiana law, a contract must satisfy the following requirements: "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be

freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 202 (5th Cir. 2016) (quoting *Dameware Dev., LLC v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 207 (5th Cir. 2012)).

### 1. *T&B's Obligations under the MOU*

Two sections of the MOU imposed payment obligations on T&B with respect to the VA project. First, paragraph 17 provides: "Payments for costs associated with the Work shall be reimbursed within 7 (seven) business days following receipt of payments for the Work."[46] Second, paragraph 11 provides: "Upon receipt of final payment for the Work, any profit or loss arising therefrom shall be allocated seventy percent (70%) to HTE and thirty percent (30%) to T&B."[47]

The record suggests that HTE paid the vast majority of the costs for work performed on the Pan Am Building. According to HTE's expert, Harold Asher, HTE's total job costs amounted to $5,806,930.[48] Asher arrived at this figure by examining an account spreadsheet dated August 10, 2016. The spreadsheet shows that HTE had overhead expenses in the amount of $1,052,620, materials expenses in the amount of $2,984,767, and labor

---

[46] R. Doc. 129-9 at 10.
[47] *Id.* at 9.
[48] R. Doc. 129-7 at 17.

expenses in the amount of $1,769,543.[49]  These amounts included T&B's labor and overhead costs.  Gaines testified in a deposition that HTE fronted T&B's labor costs and paid for materials with the understanding that HTE would be reimbursed.[50]

HTE contends, and T&B does not dispute, that T&B has fully recovered its costs, including 30% of the labor costs and 8% overhead, from the proceeds of the contract with Clark/McCarthy.[51]  While T&B has been fully reimbursed, HTE has received $4,984,481 in billings for the Pan Am Building project, which is $882,449 less than HTE's total costs.[52]  Even if HTE received the proceeds from Payment Applications 28 and 29, it would still face a loss of at least $266,378.[53]  Because paragraph 17 of the MOU entitles each party to be reimbursed for its costs, and because T&B has already been fully reimbursed, it is reasonable to infer that HTE is entitled to receive the entire amount of Payment Applications 28 and 29.  Thus, HTE has satisfied its summary judgment burden of establishing T&B's obligation to pay the proceeds from Payment Applications 28 and 29 to HTE upon receipt of the payments from Clark/McCarthy.

---

[49]     *Id.* at 33-34.
[50]     R. Doc. 129-10 at 37-38.
[51]     R. Doc. 129-2 at 12-13; R. Doc. 142-1 at 55-57.
[52]     R. Doc. 128-2 at 29; R. Doc. 129-7 at 18.
[53]     R. Doc. 129-7 at 18.

As explained earlier, the MOU also obligates T&B to receive or bear 30% of any profit or loss on the Pan Am Building project. The record shows that HTE currently faces a loss of at least $266,378 on the project,[54] while there is no evidence that T&B currently faces any loss or gain. Under the MOU, T&B must bear 30% of the total loss on the project, or $79,913, upon receipt of final payment for the work.

HTE further seeks reimbursement for a $20,000 advance made to T&B, purportedly in anticipation of profit on the VA project. But HTE does not point to any obligation on T&B's part to repay this amount. This failure is fatal to HTE's breach of contract claim to the extent it seeks repayment of that $20,000. HTE has otherwise met its summary judgment burden of establishing T&B's obligations.

T&B argues that the MOU is unenforceable for several reasons. First, T&B argues that the contract lacks a "certain object," *Ambac*, 815 F.3d at 202, because it includes no stipulated price.[55] T&B cites Louisiana Civil Code article 2756, which states: "To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price." The MOU sets out the stipulated prices between T&B and HTE: each party would be

---

54    R. Doc. 128-2 at 29; R. Doc. 129-7 at 18.
55    R. Doc. 132-1 at 30-32.

reimbursed for its costs, each party would receive a certain percentage of estimated labor costs for overhead, and T&B and HTE would split any profit or loss 30% and 70%, respectively.[56] That the contract is based on costs and percentages rather than lump sums does not render it invalid. *See Schiro-Del Bianco Enters., Inc. v. NSL, Inc.*, 765 So. 2d 1087, 1089 (La. App. 4 Cir. 2000) (noting that "Louisiana jurisprudence recognizes three basic types of construction contracts: lump sum contracts; cost plus percentage of the cost contracts (percentage contracts); and cost plus a fixed fee contract").

Second, T&B argues that the MOU is unenforceable because it lacks a "lawful purpose."[57] *Ambac*, 815 F.3d at 202. According to T&B, the contract lost its lawful purpose when Clark/McCarthy determined that its subcontract with T&B no longer qualified as participation by a disabled-veteran-owned small business. Clark/McCarthy purportedly based this determination on HTE's degree of control over the subcontract.[58] Specifically, paragraph 6 of the MOU requires that T&B's foreman (if any) report to and work at the direction of HTE's project manager.[59] T&B suggests that this degree of control violates 13 C.F.R. § 121.103, which describes how the Small Business

---

[56] R. Doc. 129-9 at 8-10.
[57] R. Doc. 142-1 at 15-16.
[58] *See* R. Doc. 132-3 at 192-93.
[59] R. Doc. 129-9 at 8.

Administration determines whether a small business is affiliated with a larger entity. The regulation provides that "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other." 13 C.F.R. § 121.103(a)(1).

It is undisputed that Clark/McCarthy decided not to report its subcontract with T&B as participation by a disabled-veteran-owned small business.[60] Even if this decision nullified one purpose of the MOU, T&B has failed to raise a genuine dispute as to whether the contract lacks any lawful purpose whatsoever. The contract still sets forth the relationship between the parties on the VA project, describes each party's duties, and allocates costs and benefits of the project between the parties. The MOU is not unenforceable merely because it created an affiliation between the parties within the meaning of 13 C.F.R. § 121.103(a)(1).

Third, T&B argues that the MOU is unenforceable because it deviates from T&B's proposal to Clark/McCarthy without the latter's approval.[61] T&B fails to explain how T&B's proposal is binding on HTE. Even if the MOU did deviate from the proposal, this deviation would lead to a contractual issue between T&B and Clark/McCarthy, not between HTE and T&B.

---

[60] R. Doc. 129-2 at 6; R. Doc. 142-1 at 15-16.
[61] R. Doc. 142-1 at 50.

Fourth, T&B argues that the MOU is unenforceable because it violates federal law.[62]  T&B again points to 13 C.F.R. § 121.103.  As explained earlier, paragraph 6 of the MOU may create an affiliation between the parties within the meaning of this regulation.  *See* 13 C.F.R. § 121.103(a)(1).  But this regulation merely defines affiliation; it does not invalidate contracts that create such an affiliation.  T&B therefore fails to raise a genuine dispute as to whether the MOU was unenforceable by virtue of its violation of federal law.

Finally, T&B asserts that it entered into the MOU out of duress.[63] Under Louisiana law, consent to enter into a contract "is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." La. Civ. Code art. 1959.  "Duress results when 'a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent.  The result of this type of duress is that the contract that is created is voidable by the victim.'"  *Wolf v. La. State Racing Comm'n*, 545 So. 2d 976, 980 (La. 1989) (quoting La. Civ. Code art. 1959 cmt. b)).  "The mere stress of business conditions will not constitute economic duress where the opposing party did not engage in conduct designed to produce that stress."  *Utley-*

---

[62]    R. Doc. 132-1 at 2.
[63]    R. Doc. 142-1 at 10.

*James of La., Inc. v. La. Dep't of Facility Planning & Control*, 593 So. 2d 1261, 1268 (La. App. 1 Cir. 1991); *see also Aubert v. Entergy Corp.*, 762 So. 2d 288, 291 (La. App. 5 Cir. 2000) ("[A] claim of financial straits does not constitute duress.").

T&B points to no evidence of duress. At most, the record suggests that HTE pressured T&B to enter into the MOU by threatening to cease financing T&B's payroll.[64] But HTE was under no obligation to provide this financial assistance in the first place. And even if the withdrawal of this financial assistance would have placed T&B in dire economic straits, the mere stress of business conditions does not constitute economic duress. *Utley-James*, 593 So. 2d at 1268. Moreover, Gaines testified in his deposition that T&B negotiated the MOU with the aid of counsel.[65] T&B therefore fails to genuinely dispute that the MOU was an enforceable contract.

### 2. *T&B's Breach*

To show breach, HTE points to T&B's refusal to make any further payments to HTE. Although the record is not clear as to when T&B formally repudiated its obligations to pay HTE, there is no genuine dispute that T&B has refused to honor these obligations. T&B stated in response to an

---

[64] *See* R. Doc. 129-10 at 262-63.
[65] *Id.* at 73-74.

interrogatory that it does not owe HTE any funds on the Pan Am Building project.[66]  During his deposition, Gaines reiterated T&B's position that HTE is not entitled to the proceeds of Payment Applications 28 and 29.[67]

T&B's obligations to pay HTE have not yet been triggered.  The MOU obligates T&B to reimburse HTE only upon receipt of the payment from Clark/McCarthy.  Likewise, the contract obligates T&B to bear 30% of the loss only upon receipt of final payment from Clark/McCarthy.  Because Clark/McCarthy has not yet made the final payment of $556,070,[68] T&B is not yet obligated to pay HTE.  But Clark/McCarthy has withheld final payment only because of T&B's actions—specifically, its refusal to make further payment to HTE.[69]  Thus, T&B has prevented payment to HTE even though HTE has established its right to be paid under the MOU.

T&B's refusal to make further payments to HTE constitutes an anticipatory breach of contract.  Louisiana courts have long "recognized that an anticipatory breach of contract is actionable."  *Andrew Dev. Corp. v. W. Esplanade Corp.*, 347 So. 2d 210, 212 (La. 1977).  The doctrine "applies when

---

[66]     R. Doc. 129-8 at 50.
[67]     R. Doc. 129-10 at 26.
[68]     R. Doc. 129-2 at 13; R. Doc. 142-1 at 57.
[69]     *See* R. Doc. 129-11 at 84-85 (deposition testimony of Stephen Maslen, an employee of Clark Construction, stating that Clark/McCarthy will not make final payment to T&B until HTE's claims against T&B are resolved).

an obligor announces he will not perform an obligation which is due sometime in the future." *Latter & Blum, Inc. v. Ditta*, 223 So. 3d 54, 59-60 (La. App. 4 Cir. 2017) (quoting *Fertel v. Brooks*, 832 So. 2d 297, 305 (La. App. 4 Cir. 2002)). "Under those circumstances, 'the obligee need not wait until the obligor fails to perform for the contract to be considered in breach.'" *Id.* (quoting *Fertel*, 832 So. 2d at 305); *see also* 6 *Louisiana Civil Law Treatise, Law of Obligations* § 1.19 (2d ed. 2018) ("The failure to perform in all such cases consists in destruction by the obligor of the obligee's expectation of receiving the performance owed to him, a failure that the obligee may regard as absolute because it outrightly violates the overriding obligation of good faith."). "The principal thesis of this doctrine is that an obligee has a cause of action when an obligor's acts or omissions reduce his ability to execute, or signify his intent to repudiate, a contractual obligation." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 438 (5th Cir. 2011) (quoting *Fairfield Dev. Co. v. Jackson*, 438 So.2d 664, 671 (La. App. 2 Cir. 1983)).

It is undisputed that HTE has completed its scope of work under the MOU.[70]  It is also undisputed that T&B has indicated its refusal to make further payments to HTE, even upon receipt of final payment from

---

[70]      R. Doc. 129-2 at 15; R. Doc. 142-1 at 64.

Clark/McCarthy. According to T&B, it owes HTE nothing under the MOU. Under these circumstances, HTE need not wait until T&B's receipt of final payment from Clark/McCarthy to seek damages. *See Latter & Blum*, 223 So. 3d at 59-60. HTE has therefore established breach.

### 3. *HTE's Damages*

T&B's refusal to make further payments to HTE has clearly resulted in damages to HTE. Because of T&B's anticipatory breach of the MOU, Clark/McCarthy has not released the amounts due HTE under Payment Applications 28 and 29,[71] and HTE has borne the entire loss on the VA project without contribution from T&B.

As to the amount of damages to which HTE is entitled, HTE seeks $655,983. This sum includes: (1) $268,643 for outstanding costs it paid, per Payment Application 28; (2) $287,427 in retainage, per Payment Application 29; (3) $79,913 as T&B's 30% share of the actual loss; and (4) $20,000 in unearned advances HTE made to T&B in anticipation of profit under the contract.[72] These damages relate solely to the Pan Am Building project. As explained earlier, HTE is not entitled reimbursement of the $20,000 advance. HTE's damages calculations otherwise have an adequate

---

[71]    *See* R. Doc. 129-11 at 84-85.

[72]    *See* R. Doc. 129-7 at 2.

evidentiary basis, and T&B offers no evidence raising a genuine dispute as to the amount of HTE's damages. Moreover, Clark/McCarthy indicated as early as April 17, 2015, that Payment Applications 28 and 29 were "consistent with [its] understanding of the amounts due."[73] The Court therefore holds that HTE is entitled summary judgment on its breach of contract claim.

### B. HTE's Remaining Claims

The Court next turns to T&B's motion to dismiss HTE's remaining claims. After T&B filed this motion, HTE moved to amend its complaint.[74] The amended complaint asserts just one claim, for breach of contract, and seeks neither nonforeseeable damages (for bad faith breach) nor nonpecuniary damages. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "the grant or denial of an opportunity to amend is within the discretion" of the Court, *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may deny a motion for leave to amend because of undue delay on the movant's part, and because of prejudice to the opposing party. *Id.* Here, HTE seeks to amend its complaint less than a month before trial, after T&B filed its own motion to dismiss. If the Court were to grant HTE's motion, the eliminated claims would be dismissed

---

[73] R. Doc. 129-11 at 201.
[74] R. Doc. 148.

without prejudice, whereas if the Court granted T&B's motion, HTE's claims could be dismissed with prejudice. In light of HTE's undue delay and the potential prejudice to T&B, the Court denies HTE's motion to amend its complaint. The Court therefore adjudicates HTE's remaining claims under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S.

at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

To the extent T&B seeks to dismiss HTE's breach of contract claims related to the MOU, the motion is denied for the reasons discussed earlier. HTE also alleges bad faith in connection with T&B's breach of contract.[75] Bad faith requires that the obligor "intentionally and maliciously fail[] to perform his obligation."  La. Civ. Code art. 1997 cmt. b.  Bad faith is not "mere bad judgment or negligence[;] it implies the conscious doing of a wrong for dishonest or morally questionable motives."  *Volentine v. Raeford Farms of La., LLC*, 201 So. 3d 325, 338 (La. App. 2 Cir. 2016).  HTE's complaint does not sufficiently allege bad faith.  While HTE alleges that T&B intentionally breached the MOU and misrepresented its reasons for doing so, there is no allegation that the breach was malicious, *i.e.*, that T&B intended to harm

---

[75]     R. Doc. 1 at 4, 6.

HTE or had some other "dishonest or morally questionable motive[]." *Volentine*, 201 So. 3d at 338. Moreover, the only difference between breach and breach in bad faith is that the latter permits recovery of nonforeseeable damages. *See* La. Civ. Code art. 1997 ("An obligor who breaches a contract in bad faith is liable for all damages, foreseeable or not, that resulted from the failure to perform."). HTE identified the damages it seeks in its motion for summary judgment, and included no nonforeseeable damages. HTE also sought to abandon its bad faith claim in its proposed amended complaint. Because HTE's original complaint does not sufficiently plead bad faith, and because HTE no longer seeks nonforeseeable damages, HTE's bad faith claim is dismissed.

HTE's prompt payment claim is based on Louisiana Revised Statutes section 9:2784.[76] This statute provides that "whenever a subcontractor receives payment from the contractor, the subcontractor shall promptly pay such monies received to each sub-subcontractor and supplier in proportion to the work completed." La. R.S. § 9:2784(A). As explained earlier, T&B has not yet received final payment from Clark/McCarthy. Thus, HTE's statutory right to prompt payment has not yet accrued, and this claim must be dismissed without prejudice.

---

[76]    R. Doc. 1 at 5.

Finally, HTE's complaint seeks nonpecuniary damages for breach of the teaming agreement.[77]  Nonpecuniary damages for breach of contract "may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss."  La. Civ. Code art. 1998.  HTE alleges that the teaming agreement was intended to foster goodwill with T&B and other contractors in the area.[78]  HTE further alleges that "the numerous unfounded and outrageous acts and statements by T&B during the course of the Project" deprived HTE of that goodwill.[79]  These allegations do not support a claim for nonpecuniary damages.  Loss of goodwill, or business reputation, "affects an economic interest which partially comprises the value of the business." *Simpson v. Restructure Petroleum Mktg. Servs., Inc.*, 830 So. 2d 480, 486 (La. App. 2 Cir. 2002).  For this reason, loss of goodwill is a pecuniary loss. *Id.*  Moreover, HTE does not allege that T&B *breached* the teaming agreement.  Indeed, the MOU terminated the teaming agreement on May 29,

---

[77]  *Id.* at 7.
[78]  *Id.* at 8 ¶ 51.
[79]  *Id.* ¶ 53.

2013,[80] and HTE fails to point to any specific wrongful act by T&B before that date. Thus, HTE fails to allege sufficient facts to raise the plausible inference that it is entitled nonpecuniary damages for breach of the teaming agreement, and this claim must be dismissed.

### C. T&B's Counterclaims

Finally, the Court addresses HTE's motion for summary judgment on T&B's remaining counterclaims. T&B's second counterclaim is entitled "malicious negligence." This counterclaim presents a potpourri of allegations, ranging from identity theft and fraud to tortious interference with T&B's contract with Clark/McCarthy.[81] The Court cannot make out the substance of this counterclaim, and T&B does not defend it in response to HTE's motion for summary judgment. Moreover, the Court notes that it previously dismissed T&B's counterclaim for tortious interference.[82] Because T&B failed to raise a genuine dispute of material fact on its "malicious negligence" counterclaim, HTE is entitled summary judgment.

T&B's third counterclaim asserts breach of the duty of good faith and fair dealing and breach of fiduciary duty.[83] An insurer owes a statutory duty

---

[80]    R. Doc. 129-9 at 11.
[81]    R. Doc. 90 at 28.
[82]    R. Doc. 112.
[83]    R. Doc. 90 at 32.

of good faith and fair dealing to an insured, La. R.S. § 22:1220, but Louisiana law does not otherwise "recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties." *Gulf Coast Bank & Tr. Co. v. Warren*, 125 So. 3d 1211, 1219 (La. App. 4 Cir. 2013). As explained later, T&B fails to satisfy its summary judgment burden on its breach of contract counterclaim. Because T&B cannot raise a genuine dispute as to breach of contract, its counterclaim for breach of the duty of good faith and fair dealing must also fail.

As for HTE's alleged breach of fiduciary duty, T&B asserts that this duty arose from the parties' partnership. *See* La. Civ. Code art. 2809 ("A partner owes a fiduciary duty to the partnership and to his partners."). Parties form a partnership when they (1) mutually consent to form a partnership, (2) share profits and losses, and (3) each have a proprietary interest in the property of the enterprise. *Darden v. Cox*, 123 So. 2d 68, 71 (La. 1960). "It has long been settled that a mere agreement to share the profits from an enterprise is not sufficient to create the status of a partnership or joint venture." *Walker v. Delahoussaye*, 116 So. 2d 884, 887 (La. App. 1 Cir. 1959). Here, the MOU is an agreement to share profits and losses. But the contract clearly states that it "does not create an agency, joint venture, partnership or other business relationship between HTE and

T&B."[84]  T&B points to no evidence of mutual consent to form a partnership that would undermines or contradicts the clear language in the contract. Accordingly, HTE is entitled summary judgment on the breach of the duty of good faith and fair dealing and the breach of fiduciary duty counterclaim.

T&B's fifth and seventh counterclaims both assert breach of contract.[85] The fifth counterclaim appears to be based on alleged misrepresentations in change orders.  But T&B fails to present any evidence of such misrepresentations.  Indeed, Gaines testified in his deposition that he had no reason to believe that any payment applications to Clark/McCarthy were inaccurate.[86]  Even if the change orders included some misrepresentations, T&B has not even attempted to explain how such misrepresentations violated the MOU or injured T&B.  HTE is therefore entitled summary judgment on the fifth counterclaim.

T&B fails to articulate the basis of its general breach of contract counterclaim.  But T&B relies on the testimony of its experts, Philip Monteleone and E. Tyler Nichols, Jr., who calculated T&B's purported damages.  According to their report, T&B significantly overpaid HTE during

---

[84]    R. Doc. 129-9 at 11.
[85]    R. Doc. 90 at 43, 51.
[86]    R. Doc. 129-10 at 106; *see also id.* at 184-85.

the course of the Pan Am Building project.[87]  The experts base this opinion on the assumption that HTE was entitled to no more than 70% of the payments received for the parties' work on that project.[88]  The total amount of payments received for the Pan Am Building (including the $556,070 in outstanding payment applications) was $5,540,552, and the experts assume that HTE was entitled to no more than 70% of the total, or $3,878,686.[89]  By subtracting this figure from T&B's actual payments to HTE, the experts arrive at their damages calculation for the Pan Am Building: $1,186,587.[90] The experts calculate T&B's losses on the parking garage project, in the amount of $712,632, by adding four figures: the unpaid balance on Pay Application 6A, overcharges by HTE, T&B's share of Change Order No. 8, and uncollected retainage.[91]

Contrary to the experts' assumption, there is no contractual provision that gives T&B the right to 30% of the *gross* receipts on the VA project.  The only provision in any of the contracts between the parties referring to a 70%/30% split is paragraph 6 of the MOU, which states that 70% of the *profit* or *loss* from the VA project shall be allocated to HTE, and 30% shall be

---

[87]     R. Doc. 128-2 at 7.
[88]     *Id.*
[89]     *Id.*
[90]     *Id.*
[91]     *Id.* at 8.

allocated to T&B.[92]  Because the experts' assumption has no evidentiary basis, the experts' opinion is inadmissible and does not raise a genuine dispute as to whether HTE is liable for damages on the Pan Am Building project.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

Similarly, T&B fails to point to any evidentiary basis for its experts' opinion on the parking garage.  T&B fails to explain why it is entitled to the unpaid balance on Payment Application 6A.  Additionally, the experts do not explain how they calculated overcharges by HTE, T&B's share of Change Order No. 8, or uncollected retainage; these numbers appear in the report without any support whatsoever.  HTE is therefore entitled summary judgment on the seventh counterclaim.

## III.  CONCLUSION

For the foregoing reasons, HTE's motion for summary judgment on its breach of contract claim is GRANTED.  T&B's motion to dismiss is GRANTED IN PART and DENIED IN PART.  HTE's motion for leave to amend its complaint is DENIED.  HTE's claim for nonforeseeable damages in connection with T&B's breach of contract and for nonpecuniary damages

---

[92]  R. Doc. 129-9 at 9.

for breach of the teaming agreement are DISMISSED WITH PREJUDICE, and HTE's prompt payment claim is DISMISSED WITHOUT PREJUDICE.

HTE's motion for summary judgment on T&B's remaining counterclaims is GRANTED. T&B's counterclaims are DISMISSED WITH PREJUDICE. HTE's motion to exclude the testimony of T&B's experts, Philip Monteleone and E. Tyler Nichols, Jr. is also GRANTED.

New Orleans, Louisiana, this __17th__ day of May, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE